UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) Case No. 2:14-cr-0280-JCM-GWF |
| | ) |
| vs. | ) **FINDINGS &** |
| | ) **RECOMMENDATIONS** |
| DOMINIQUE WELLS, | ) |
| | ) **Motion to Suppress (#108)** |
| Defendant. | ) |
| | ) |

This matter is before the Court on Defendant Dominique Well's Motion to Suppress Evidence Seized in Violation of the 4th Amendment (#108), filed on August 28, 2015. The Government filed its Response (#117) on September 21, 2015. Defendant filed a Supplementary Motion to Suppress (#119) on September 22, 2015, and a Rebuttal to Government's Response (#121) on October 2, 2015. The Court conducted a hearing in this matter on October 9, 2015.

## BACKGROUND

The indictment in this case charges Defendant Dominique Wells with the commission of five robberies in violation of 18 U.S.C. § 1951. Defendant is also charged with conspiracy to interfere with commerce by robbery in relation to two of the alleged robberies and with use of a firearm during and in relation to a crime of violence with respect to all five alleged robberies. *Indictment (#1)*. Defendant Wells allegedly robbed a 7-Eleven Store in Henderson, Nevada on June 15, 2014; the Texas Market in Las Vegas, Nevada on June 19, 2014; and Boulder Liquor in Las Vegas, Nevada on June 21, 2014. Defendant Wells and Andre Hall allegedly robbed Nevada Title and Payday Loans in Henderson, Nevada on June 26, 2014. Defendant Wells, Andre Hall and Christopher Dobbins allegedly robbed GameStop in Henderson, Nevada on July 3, 2014. *Id.*[1]

---

[1] Hall and Dobbins have both pled guilty in this case and are awaiting sentencing.

Defendant Wells, who is representing himself, moves to suppress evidence seized during the execution of a search warrant that was issued by a Clark County, Nevada justice-of-the-peace on July 18, 2014. *See Government's Hearing Exhibit 1, Search Warrant.* Defendant Wells argues that the telephone affidavit submitted by Detective Ebert of the Henderson Police Department omitted material facts which, if included in the affidavit, would have shown that probable cause did not exist to support the issuance of the warrant. Defendant requests an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674 (1978). The Government argues that if the omitted information had been included in the affidavit, it would still have provided probable cause for the issuance of the warrant. Defendant also argues that his arrest violated the Fourth Amendment.

Detective Ebert's affidavit requested a warrant to search an apartment located at 4311 Boulder Highway, Las Vegas, Nevada and seize the following items of evidence relating to the subject robberies:   (A) five gold rings, (B) black semi-auto pistol with laser site, (C) black/silver handgun, semi-auto with laser site, (D) Newport cigarettes, (E) camouflage shorts, (F) limited items of personal property which would establish possessory interest in the items to be seized, (G) black ski mask, (H) black T-shirt, (J) orange-brown baseball cap, (K) gold-rimmed sunglasses, (L) two Xbox games consoles, (M) two Sony PlayStation game consoles, (N) U.S. currency, and (O) the person of Dominique Wells. *Government's Hearing Exhibit 2, Detective Ebert's Affidavit, pgs. 2-3.*

The affidavit stated that the person who robbed Texas Liquor on June 19, 2014 was described as a black male wearing camouflage shorts, a black T-shirt, and a black facemask/ski mask, with a black handgun that had a laser site attached. "Evidence recovered at the scene was a left palm print belonging to Dominique Wells." The suspect left with $200 and five packs of Newport cigarettes. *Affidavit, pg. 4.* The person who robbed Boulder Liquor on June 21, 2014, was also described as a black male wearing camouflage shorts, a black T-shirt, and black facemask/ski mask with a black handgun that had a laser site attached. The suspect left with $250 and five packs of Newport cigarettes. *Affidavit, pgs. 4-5.* During the robbery of Nevada Title and Payday Loans on June 26, 2014, the robber used a handgun with a laser site. The suspect left with $196 and four

2

rings from one victim, which are further described in the affidavit. *Id., pg. 5.* R.B.,[2] a victim/witness to the robbery of the GameStop on July 3, 2014, told responding police officers that the business had just been robbed at gunpoint by two black male adults. One of the suspects was wearing a white T-shirt and camouflage shorts, and was bearing a black handgun with a silver slide and an attached laser site. The suspects left with $538, a gold engagement ring with a single diamond, an Xbox, and two Sony Playstations. *Id., pg. 5.*

The affidavit stated that Henderson Police Department Detective Condratovich spoke to Detective Flynn of the Las Vegas Metropolitan Police Department ("LVMPD") on July 3, 2014 about a series of robberies that occurred along the Boulder Highway in which the suspect was described as a black male who wore camouflage shorts in each of the robberies. The same suspect was also involved in the robbery of a 7-Eleven store in Henderson, Nevada. Detective Flynn provided surveillance photographs from one of the robberies in which a second black male was involved "and appeared to be the same subject identified as Andre Hall (phonetic), who is currently in custody [for the] GameStop robbery." *Affidavit, pgs. 5-6.* On July 4, 2014, Detective Flynn had other LVMPD detectives contact some of the weekly motels along Boulder Highway and present employees with surveillance photographs from the GameStop robbery. The general manager at the Budget Suites near Boulder Highway and Indios recognized the three suspects as Christopher Dobbins, Andre Hall, and Dominick Wells. Hall and Dobbins were recognized as previous tenants. The general manager also recognized Wells as an associate of Dobbins and Hall, but did not believe that Wells was staying with them at the Budget Suites. *Id., pg. 6.*

The affidavit stated that on July 7, 2014, Detective Condratovich positively identified Dobbins and Hall as two of the robbery suspects during the GameStop robbery based on a comparison of recent booking photos to photos of Dobbins and Hall on Facebook. *Id., pg. 6.* On July 14, 2014, Detective Condratovich received a call from Detective Flynn who advised that Andre Hall had been located and taken into custody for the Gamestop robbery. After being advised of his *Miranda* rights, Andre Hall admitted to driving Christopher Dobbins and another male whom he

---

[2] R.B.'s full name is stated in the affidavit.

3

knew as Dom to an area off Boulder Highway and College near the GameStop. Hall stated that all three went into a Big 5 Sporting Goods store and looked at airsoft guns. When they walked out, Hall entered the GameStop for a moment, and Dobbins and Dom kept walking by the GameStop. As Hall was walking out of the GameStop, Dobbins and Dom went in. Hall was waiting in a car when Dobbins and Dom came running out of the store carrying Xboxes. They got into another vehicle in the parking lot and left. *Affidavit, pgs. 6-7.* Detective Condratovich showed Hall a photo line-up containing Dominick Wells' photograph. "Andre advised number-five photo as Dominick Wells. Andre knows that Dominick has at least two guns. One is a black semi-automatic with a laser site, and the other is a black semi-automatic with a chrome slide." *Affidavit, pg. 7.*

On July 15, 2014, Detective Ebert checked LeadsOnline for any pawns conducted by Dobbins, Hall and Wells. LeadsOnline showed that on July 9, 2014, Dobbins pawned an Xbox One gaming system at EZPAWN located on the Boulder Highway. The serial number on the Xbox matched one of the Xboxes stolen from the GameStop on July 3, 2014. *Affidavit, pgs. 7-8.*

The affidavit stated that on July 16, 2014, Henderson police detectives took Christopher Dobbins into custody. Detective Ebert and Detective Condratovich interviewed Dobbins after he was advised of his *Miranda* rights. The affidavit stated that "Dobbins was hesitant to provide details of the robbery but admitted to being present during the robbery and that he received one of the Xboxes as payment for the robbery." Dobbins stated that he, Andre Hall and another male whom he knew as "Red," got into Hall's car and went to Hall's room at the Siegel Suites on Boulder Highway after the GameStop robbery. Dobbins was shown a "six-pack photo lineup" and asked if he recognized anyone in the photo lineup as "Red." Dobbins confirmed that the photograph of Dominick Wells, photo number five, was the person he knew as "Red." *Affidavit, pgs. 8-9.*

On July 17, 2014, Detective Ebert showed the victim of the Nevada Title and Payday Loan robbery, a photo lineup containing a picture of Dominick Wells, and two other photo lineups containing photographs of Dobbins and Hall. The victim, Christine Hopper, identified a photograph of Defendant Wells "as the suspect who came in the day before the robbery and appeared to be casing the business. She advised Wells was the same suspect who had possession of the black firearm with the laser attached to it during the robbery and pointed it at her co-worker, William

Koppel (phonetic)." *Affidavit, pg. 9.* Christine Hopper was not able to identify the other suspects that were in the store prior to or during the robbery from the photo lineups. She stated that "one of the suspects with Wells looked like Andre Hall; however, she could not be certain that–that Hall was the suspect." *Id.*

On July 17, 2014, Detectives Ebert and Noswinger interviewed the assistant manager of the Siegel Suites located on Boulder Highway. The assistant manage identified photographs of Dobbins, Hall and Wells contained in photo lineups as friends of each other. The assistant manager stated that Wells and Andrea Wine, whom she identified as the mother of Wells' children, had recently been evicted. The assistant manager identified another tenant who babysat Wells' and Wine's children. Detective Ebert met with this tenant who stated that he had just driven Wells' and Wine's children to where they were now living–4311 Boulder Highway, Room #426, Las Vegas, Nevada 89121. Detective Ebert contacted the manager at that location and showed him a photograph of Wells. The manager recognized Wells as being on the property. The tenant on the apartment lease was Ryan Rollins. The manager(s) believed that Wells was hanging out with Ryan Rollins, "but they were not positive." *Affidavit, pgs. 10-11.*

Based on information that Wells was residing at 4311 Boulder Highway, Room #426, Las Vegas, Nevada 89121, Detective Ebert requested the issuance of the search warrant to search the premises at that location for the articles listed in the affidavit. *Id., pgs. 11-13.* According to the search warrant return, officers seized a Glock Model 27 40 caliber handgun, a pair of gold rim sunglasses, one black glove and one shotgun shell. *Government's Hearing Exhibit 1, Return.* The Court is also informed that Defendant Wells was arrested during the execution of the search warrant.

Defendant Wells argues that Detective Ebert omitted material information from his affidavit and misled the justice-of-the-peace as follows: (1) Detective Ebert failed to inform the justice-of-the-peace what Andre Hall actually said in his interview and how many times he lied and told different stories. Defendant argues that Detective Ebert purposefully failed to state that Hall lied for more than 45 minutes in the interview before the detective obtained the statements by psychological coercion or by improper inducement so that Hall's will was overcome. *Motion (#108), pg. 5*; (2)

Detective Ebert failed to disclose the coercive tactics he used to obtain the statement from Christopher Dobbins, and failed to disclose that besides being hesitant to give details about the robbery, Dobbins also lied and told different stories. *Id., pg. 5*; (3) Detective Ebert failed to disclose that during her recorded interview with the police on June 16, 2014, victim-witness Christine Hopper stated: "I never looked at their faces because I thought they would shoot us, so I just didn't look at their faces." *Id., pgs. 5-6.* Defendant also argues that Ms. Hopper never stated that she recognized Defendant as one of the robbers. Detective Ebert asked Ms. Hopper if she would be able to recognize the suspect if she saw him again, but that she never said yes. *Id., pg. 7*; (4) Detective Ebert omitted the entire statement made by William Copple, the other victim-witness during the Nevada Title and Payday Loan robbery, who stated that the suspect holding the gun on him was taller than Mr. Copple by at least two or three inches which made the robber at least 6'2" or 6'3" tall. Mr. Copple also stated that the robbers were both wearing masks and that the gun was all black, not black with a chrome slide. *Motion (#108), pg. 6.*

The Government has submitted a draft of how the affidavit would have read if it was corrected to include the information that the Defendant claims was improperly omitted. *Government's Response (#117), Exhibit 1.* The Government's proposed additions, in italics, appear are as follows:

> Andre was read his rights per Miranda and decided to speak with Detective Condratovich. *Andre initially denied having any involvement in the robbery and told different versions of events.* Andre admitted to driving Christopher Dobbins and another male he knew as Dom to an area off Boulder Highway and College, near the GameStop. He admitted they all three went into Big 5 Sporting Goods and looked at airsoft guns, and when they walked out, he went into the GameStop for a moment by himself, and Dobbins and Dom kept walking by the GameStop. Andre advised that he - - as he was walking out of GameStop, Dobbins and Dom went in. He was waiting in a car when the - - when they came running out of the store carrying some Xboxes. They got into another vehicle that was in the parking lot and left.

*Government's Response (#117), Exhibit 1, pg. 8, lines 6-17.*

> On Wednesday, July 16th, 2014, at approximately 1215 hours, Christopher Dobbins was observed in the back alley of 307 Atlantic. Affiant, along with Henderson police detectives, responded to that location, made contact with Christopher, at which time he was placed into custody. Affiant and Detective Condratovich conducted an

interview with Dobbins after he was read his rights per Miranda and decided to speak with Affiant and Detective Condratovich. During the interview, Dobbins was hesitant to provide details of the robbery, *and he initially told different versions of events, but he subsequently* admitted to being present during the robbery and that he received one of the Xboxes as payment for helping with the robbery. Dobbins admitted to later pawning the Xbox at the pawn shop and receiving $150 for the Xbox.

*Government's Response (#117), Exhibit 1, pg. 9, lines 13-24.*

On July 17th, 2014, at 1255 hours, affiant met with the victim Christine Hopper (phonetic) from the Nevada Title and Payday Loan robbery, under DR#14-09989, at the east station to show her a photo lineup containing a picture of Dominick Wells and two other photo lineups containing - - containing a picture of Dobbins and Hall. Christine viewed a series of pictures which contained a photo of Dominick Wells in box number five. Christine Hopper identified Dominick Wells in box number five as the suspect who came in the day before the robbery and appeared to be casing the business. She also advised Wells was the same suspect who had possession of the black firearm with the laser attached to it during the robbery and pointed it at her coworker, William Koppel (phonetic). Christine advised the day before the robbery Wells had come in the - - in the business and was asking questions about the business next door. She believed he was casing their business prior to robbing it.

*During a previous interview on June 26, 2015, immediately after the robbery, when Christine was asked if she would be able to identify the person who had previously come into the store if she saw his face, Christine indicated that the person had "three Snoop Dogg pom pom ponytails that were not properly combed out like he slept on them all night." Christine also indicated that she had not looked at the robbers' faces because she was afraid she would be shot.*

Christine viewed two other photo lineups, one containing a photo of Christopher Dobbins and the other containing a photo of Andre Hall. Christine did not identify any other suspects that were inside her store with Wells prior to or during the robbery. Christine advised that one of the suspects with Wells looked like Andre Hall; however, she could not be certain that - - Hall was the suspect.

*During an interview with William Copple, the other victim from the Nevada Title and Payday Loan robbery, he indicated that the robbers were wearing masks and the robber who had a gun pointed at him had an all black gun with a laser site attached. Copple also stated that the person who had the gun pointed at him was taller than he was by at least 2 or 3 inches and that he (the robber) was approximately 6'2 or 6'3. Copple also indicated that he was not sure if the second robber had a firearm or not.*

*Government's Response (#117), Exhibit 1, pg. 9, lines 13-24; pg. 10, lines 1-16.*

. . .

The Government argues that if Detective Ebert's affidavit was corrected to include the omitted information as set forth in its proposed revisions, there would still have been probable cause to support the issuance of the search warrant.

## DISCUSSION

### 1.      Defendant's Request for a *Franks* hearing.

A defendant is entitled to challenge the validity of a search warrant if he makes a substantial preliminary showing that (1) the affidavit in support of the warrant contains intentionally or recklessly false statements and (2) the affidavit purged of its falsities would not be sufficient to support a finding of probable cause. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). In determining whether a defendant is entitled to an evidentiary hearing with respect to such a challenge, *Franks* states:

> There is, of course, a presumption of validity with respect to the affidavit supporting the search warrant.  To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine.  There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof.  They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons.  Affidavits or sworn or otherwise reliable statements of witnesses should be furnished or their absence satisfactorily explained.  Allegations of negligence or innocent mistake are insufficient.

438 U.S. at 171.

If the defendant makes a substantial showing that the affidavit contains intentionally or recklessly false statements, "and if, when the material that is the subject of the alleged falsity is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Franks*, 438 U.S. at 171-172.  On the other hand, if the remaining content is insufficient to support probable cause, then the defendant is entitled to an evidentiary hearing.[3]  *Id.*  At the hearing, the defendant has the burden of proof by a preponderance of the

---

[3] *United States v. Dicesare*, 765 F.2d 890, 894-895 (9th Cir. 1985) summarizes these requirements as follows:  (1) The defendant must allege specifically which portions of the warrant affidavit are claimed to be false; (2) the defendant must contend that the false statements or omissions were deliberately or recklessly made; (3) a detailed offer of proof, including affidavits, must accompany the allegations; (4) the veracity of only the affiant must be challenged; and (5) the challenged statements must be necessary to find

evidence to establish that the false statements were deliberately made or were made with a reckless disregard for the truth. *United States v. DeLeon*, 955 F.2d 1346, 1348 (9th Cir. 1992).

Intentional or reckless omissions may also provide grounds for a *Franks* hearing. *United States v. Jawara*, 474 F.3d 565, 582 (9th Cir. 2007) states in this regard:

> "A search warrant, to be valid, must be supported by an affidavit establishing probable cause." *United States v. Stanert,* 762 F.2d 775, 778 (9th Cir. 1985). In *Stanert,* we applied the rationale of *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to hold that a defendant could challenge a facially valid affidavit by making a substantial preliminary showing that "the affiant intentionally or recklessly omitted facts required to prevent technically true statements in the affidavit from being misleading." *Stanert,* 762 F.2d at 781 ("By reporting less than the total story, an affiant can manipulate the inferences a magistrate will draw. To allow a magistrate to be misled in such a manner could denude the probable cause requirement of all real meaning.") In addition, the defendant must show that the "affidavit, once corrected and supplemented," would not "provide ... a substantial basis for concluding that probable cause existed" to search defendant's residence. *Id.* at 782.

In determining whether a defendant is entitled to an evidentiary hearing, "[c]lear proof of deliberate or reckless omission is not required. (citation omitted). Such proof is reserved for the evidentiary hearing." *United States v. Stanert*, 762 F.2d at 781. The court in *Stanert* found that the defendant made a substantial preliminary showing that the affidavit omitted material information regarding each of the key facts relied on by the government to support probable cause and that the nature of the omissions suggested that they were made intentionally or at least recklessly.

Probable cause is a fluid concept which turns on the assessment of probabilities in particular factual contexts, not readily or even usefully reduced to a neat set of legal rules. *United States v. Adjani*, 452 F.3d 1140, 1145 (9th Cir. 2006), citing *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) states that "probable cause means 'fair probability,' not certainty or even a preponderance of the evidence. . . . In short, a magistrate judge is only required to answer the 'commonsense, practical question whether there is 'probable cause' to believe that contraband or evidence is located in a particular place' before issuing a search warrant." *Id.*, at 1160. The issuing judge's determination of probable

---

probable cause.

cause should also be paid great deference. *Id.*

Defendant Wells argues that the statements of Andre Hall and Christopher Dobbins were obtained by "psychological coercion and improper inducement" and therefore were not voluntary statements. *Motion (#108), pg. 5.* He also argues that both Hall and Dobbins initially lied to the detectives about their involvement in the GameStop robbery. *Id.* The Court assumes that an involuntary confession is so lacking in the indicia of reliability that it cannot provide the basis for probable cause. Involuntary confessions are also excluded from evidence not only because they may result in false confessions, but also "'because the methods used to extract them offend an underlying principle in the enforcement of our criminal law.'" *United States v. Preston*, 751 F.3d 1008, 1017 (9th Cir. 2014) (quoting *Rogers v. Richmond*, 365 U.S. 534, 540-41, 81 S.Ct. 735 (1961).

"'A confession is involuntary if coerced by physical intimidation or psychological pressure.'" *United States v. Crawford*, 372 F.3d 1048, 1060 (9th Cir. 2004) (quoting *United States v. Haswood*, 350 F.3d 1024, 1027 (9th Cir. 2003)). *Crawford* further states:

> In determining whether a defendant's confession was voluntary, "the question is 'whether the defendant's will was overborne at the time he confessed.'" *Id.* (quoting *Clark v. Murphy*, 331 F.3d 1062, 1072 (9th Cir.), *cert. denied*, — U.S. —, 124 S.Ct. 446, 157 L.ed. 313 (2003) (quoting *Haynes v. Washington*, 373 U.S. 503, 513, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963)). Psychological coercion invokes no per se rule. *United States v. Miller*, 984 F.2d 1028, 1030 (9th Cir. 1993). Therefore, "we must consider the totality of the circumstances involved and their effect upon the will of the defendant." *Id.* at 1031 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973).

Trickery, deceit, and even impersonation do not render a confession inadmissible in non-custodial situations and usually does not render the confession involuntary in a custodial situation unless government agents make threats or promises. *Crawford*, 372 F.3d at 1060-61. The court noted that police commonly engage in ruses such as suggesting to a suspect that a confederate has just confessed or that the police have or will secure physical evidence against the suspect. The court further noted that confessions procured by deceit have been held voluntary in a number of situations. *Id.*

The Court has reviewed the recorded interviews of Christopher Dobbins and Andre Hall. *Government Hearing Exhibits, 7, 8 (transcripts), and 10 (audio recording).* Both Dobbins and Hall

were taken into custody by police detectives and were informed at the outset of their interviews that they were under arrest. They were both given *Miranda* warnings before the detectives asked them questions about the subject robberies. Although neither Hall nor Dobbins expressly waived their right to remain silent or to consult with counsel, neither individual declined to speak to the detectives or stated that he wanted to consult with an attorney at any time during the interview. The detectives did not make any specific promises to Dobbins or Hall if they confessed to their involvement in the Gamestop robbery or other robberies. Both individuals were told that they would be criminally charged with respect to the robbery, but that the detectives would be able to speak in their favor to the prosecutor if they cooperated in identifying the other participants in the robbery. The detectives confronted both Dobbins and Hall when they believed that Dobbins and Hall were not being honest or forthcoming about their involvement in the robbery.

Mr. Hall initially denied participating in the Gamestop robbery and stated that he had coincidently met up with Dobbins and Defendant Wells after they had apparently committed the robbery. *Government Exhibit 8, pgs. 6-10.* The detective confronted Hall about this story, stating: "I'm trying to get the truth out of you. Listen, I know you were there. I know that you didn't go in and rob the store. I know that you didn't rob the Game Stop. But I know you were there with them. That's why I'm trying to find out who these two guys are." *Id., pg.11, lines 13-16.* As the interview progressed, Mr. Hall eventually admitted his involvement in the GameStop robbery. Christopher Dobbins was arguably even more evasive than Andre Hall. He eventually admitted, however, that he, Andre Hall, and an individual whom he knew as "Red" were involved in the GameStop robbery. The detectives persisted in questioning Hall and Dobbins about the robbery and demanding that they provide truthful statements about their involvement. Hall and Dobbins eventually acceded to the detective's persistence, admitted their involvement and identified Defendant Wells as a co-participant. Although the detectives employed verbal pressure on both Hall and Dobbins, the detectives' questioning did not rise to the level of psychological coercion sufficient to overcome Hall's or Dobbins' free will and thereby render their confessions involuntary.

Detective Ebert should have informed the justice-of-the-peace that Hall and Dobbins initially denied involvement in the GameStop robbery before admitting that they participated in the

11

robbery and identified Defendant Wells as one of the robbers. If this information had been included in the affidavit, it would have arguably lessened the reliability of Hall's and Dobbins' statements. On the other hand, it is not surprising that a suspect would first deny involvement in a crime, but when confronted with the evidence against him, admit to his involvement and identify the other persons who participated in the crime. As corrected, Detective Ebert's affidavit would still support a finding of probable cause to believe that Defendant Wells committed the GameStop robbery based on the statements of Hall and Dobbins. In addition, the affidavit stated that the general manager of the Budget Suites on Boulder Highway identified Dobbins, Hall and Defendant Wells from surveillance photographs taken during the GameStop robbery which further supported probable cause to believe that Defendant Wells committed that robbery. *Affidavit, pg. 6.* Defendant is not entitled to a *Franks* evidentiary hearing based on the alleged omissions relating to the statements made by Andre Hall and Christopher Dobbins.

Detective Ebert's omissions relating to the statements of witness Christine Hopper are arguably more significant. Ms. Hopper was interviewed by the police shortly after the Nevada Title and Payday Loans robbery on June 26, 2014. It is evident from her statements that she was emotionally upset by the robbery. After describing the conduct of the robbers and stating that she didn't look at their faces, Ms. Hopper told the officer that a black male had come into the business the week before and asked questions about the business next door. After this, a second, taller, black male came into the business and also asked questions about the business next door. Ms. Hopper found the behavior of these individuals to be suspicious. *Government Exhibit 4, pgs. 4-7.* She further stated:

> Same guy that came in before him came in again. I saw him come in. And when he came in the second time, he's like - - the first time he came in, I said, There's something up with that guy. And I don't like him. And not just cause he was black. But cause he was, kind of, an asshole. And he was, like, real entitled.
>
> And he came in the second time. I saw him drive up. And he got out and he came in. But he came in, he walked right to the corner right here. Still with his phone. And I said, Can I help you?
>
> And he said, What's going on with next door?
>
> I said, You asked me that last week.

>And he goes, And you don't have to be smart about it. But he never looked up at me. Like, he would never make eye contact with me, even the first time he was here. He was busy on his phone.
>
>And I said, We don't have anything to do with them.
>
>And he was about the same build as that second kid that was in here, the one that had me taping the girl.
>
>I just thought it was strange.
>
>Q. If you saw a picture of him would you be able to ID him, you think?
>
>I kept describing him as Snoop Dog with (incomprehensible) all that work, like, not properly combed because he looked like he slept on it all night, like, he was really - -.

*Government Exhibit 4, pgs. 8-9.*

As Defendant argues in his motion, Ms. Hopper did not state if she would be able to identify the robber if she saw a photograph of him. In her subsequent written statement on the "Photo Line-Up Witness Instructions and Statement" which she signed on July 17, 2014, however, Ms. Hopper stated:

>"I picked #5 [photograph of Defendant Wells] because he looks like guy who came in previously and the date of the robbery he was holding the gun with the laser to Will Copple. His facial features were the same as the previous guy."

*Government Exhibit 3*.

On the notes next to the photograph of Defendant Wells, Ms. Hopper also stated: "His facial features are very distinct." *Id.* As Defendant has also pointed out, however, Will Copple, the other victim of the Nevada Title and Payday Loans robbery, told the police that the robbers were wearing masks.

Detective Ebert's affidavit implied that Ms. Hopper saw the robber's face during the June 26th robbery and recognized him as the same individual who had come into the business the day before, as well as a week earlier. A fair reading of Ms. Hopper's statement during the June 26th interview is that the second robber had the same build as the person who had previously entered the business. Ms. Hopper, however, did not look at the robbers' faces and Mr. Copple stated that the robbers were wearing masks. This information, if included in the affidavit, would have diminished

the reliability of Ms. Hopper's identification of Defendant Wells as one of the robbers.

The Court nevertheless finds that if the omitted information regarding Ms. Hopper's identification had been included in the affidavit, there would still have been probable cause to believe that Defendant Wells robbed Nevada Title and Payday Loans. First, the affidavit correctly stated that Ms. Hopper identified Defendant Wells as the suspect who came into the business the day before the robbery and appeared to be casing the business. *Affidavit, pg. 9.* Second, the affidavit showed that a single individual robbed several business locations in Henderson and Las Vegas Nevada between June 15 and June 21, 2014. The individual who committed these robberies reportedly wore a black T-shirt, camouflage shorts and displayed a black handgun that had an attached laser site. Evidence recovered from the scene of the robbery of Texas Liquor on June 19, 2014, included the left palm print of Defendant Wells. *Affidavit, pg. 4.* During the robbery of Nevada Title and Payday Loans on June 26, 2014, the robber also used a handgun with a laser site. *Id., pg. 5.* Finally, the statements of Mr. Hall and Mr. Dobbins established that Defendant Wells committed the GameStop robbery on July 3, 2014 during which one of the suspects wore a white T-shirt and camouflage shorts, and displayed a black handgun with a silver slide and an attached laser site. *Affidavit, pg. 5.* Ms. Hopper's identification of Mr. Wells, plus the totality of the information that tied Mr. Wells to the other robberies is more than sufficient to support probable cause to believe that he was one of the two robbers of Nevada Title and Payday Loans on June 26, 2014. Defendant's request for a *Franks* evidentiary hearing with respect to this robbery should also be denied.

    **2.**    **Whether the warrantless arrest of Defendant in his home violated the Fourth Amendment.**

Defendant Wells argues that the officers' warrantless arrest of him in his apartment violated the Fourth Amendment. In *Payton v. New York*, 445 U.S. 573, 576, 100 S.Ct. 1371, 1375 (1980), the Supreme Court held that the Fourth Amendment prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest. This rule also applies when the police force a suspect to exit his house so that he may be arrested. *United States v. Nora*, 765 F.3d 1049, 1054 (9th Cir. 2014). Where the police enter a suspect's home

pursuant to a valid search warrant, however, they may arrest a suspect based on probable cause without the requirement of a separate arrest warrant. *Russell v. Harms*, 397 F.3d 458, 466 (7th Cir. 2005). The Seventh Circuit noted that decisions by the Eighth and Tenth Circuits support this conclusion. *Id.*, citing *Mahlberg v. Mentzer*, 968 F.2d 772, 775 (8th Cir. 1992) and *Jones v. City of Denver*, 854 F.3d 1206, 1209 (10th Cir. 1988). Unpublished decisions by the Second and Third Circuits also agree with *Russell v. Harms*. *See United States v. Russell*, 501 Fed.Appx. 67, 69 (2nd Cir. 2012) and *United States v. Cox*, 553 Fed.Appx. 123, 129 n. 3 (3rd Cir. 2014). In this case, the search warrant was valid and the police therefore had lawful grounds to enter Defendant Wells' apartment. Based on the facts set forth in the search warrant affidavit, the police also had probable cause to arrest the Defendant. The officers therefore did not violate Defendant's Fourth Amendment rights with respect to his arrest.

## CONCLUSION

The Court finds that if the omitted information had been included in Detective Ebert's affidavit, there would still have been probable cause to support the issuance of the search warrant. Defendant Wells is therefore not entitled to a *Franks* evidentiary hearing with respect to the omitted information. Because the Court concludes that the search warrant was valid, the warrantless arrest of the Defendant in his residence also did not violate the Fourth Amendment. Accordingly,

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant's Motion to Suppress Evidence Seized in Violation of the 4th Amendment (#108) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or

. . .

appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 2nd day of December, 2015.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge