UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　　　　　Plaintiff,<br><br>　v.<br><br>DOMINQUE WELLS,<br><br>　　　　　　　　　Defendant. | Case No. 2:14-cr-00280-JCM-GWF<br><br>**ORDER** |

Presently before the court is Dominque Wells's ("Wells") motion for compassionate release under the First Step Act. (ECF No. 404). The United States of America ("the government") filed a response (ECF No. 408), to which Wells replied (ECF No. 409).

**I.    Background**

On April 21, 2016, Wells was convicted by a jury for his participation in a string of armed robberies with two codefendants.[1] On July 21, 2016, this court sentenced Wells to 112 years, the bulk of which was due to the mandatory minimum *consecutive* sentences required for five gun charges in connection with his crimes under 18 U.S.C. § 924(c).

Immediately after sentencing, Wells filed a timely appeal and the Ninth Circuit affirmed most of the convictions except for the non-924(c) predicate offenses (Hobbs Act conspiracy and Hobbs Act robberies). The Ninth Circuit held that this court did in fact have

---

[1] Wells, apparently "frustrated and overwhelmed by these federal charges" chose to represent himself and pushed his case to trial. Of note, his two co-defendants, Andre Hall and Christopher Dobbins each negotiated a plea agreement and received only 4-year sentences.

discretion to reduce Wells's non-mandatory sentences to compensate for the substantial sentences mandated by the § 924(c) convictions—a discretion that this court heretofore declined to exercise at Wells's original sentencing.

Accordingly, the court resentenced Wells on December 10, 2021, to one day imprisonment for each non-924(c) count, to run concurrently with each other, resulting in a reduced total sentence of 107 years and one day.

After serving about seven and a half years in prison, Wells now moves for a sentence reduction under 18 U.S.C. § 3583(c).[2]

## II. Legal Standard

The court can reduce a prison sentence for "extraordinary or compelling reasons" under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5239 (Dec. 21, 2018). 18 U.S.C. § 3582(c)(1)(A). This statutory authorization is a limited exception to the general rule that a court "may not correct or modify a prison sentence once it has been imposed." *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (citing 18 U.S.C. § 3582(c)).

Before a defendant can move for compassionate release, he must first ask the BOP to do so on his behalf, typically by submitting a request to the warden. 18 U.S.C. § 3582(c)(1)(A). He must then exhaust all administrative rights to appeal the BOP's denial of his request or wait thirty days for his request to go unanswered, whichever comes first. *Id.*

To grant compassionate release, the court must make two findings. First, there must be "extraordinary and compelling reasons" that warrant compassionate release and, second, release must be "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* The applicable Sentencing Commission policy statement lists specific circumstances related to the defendant's medical condition, age, and family circumstances that

---

[2] Wells has exhausted his administrative remedies, as required by statute. On August 1, 2021, Mr. Wells filed a request for compassionate release while at Nevada Southern Detention Center. He received a denial on August 11, 2021. (*See* ECF No. 404-2). The government does not dispute this.

are extraordinary and compelling.[3] USSG § 1B1.13, cmt. 1. The policy statement also requires the court to consider whether the defendant is a danger to the community based on the factors set forth in 18 U.S.C. § 3142(g). USSG § 1B1.13(2).

District courts have granted compassionate release under circumstances beyond those listed in the policy statement. *United States v. Regas*, No. 3:91-CR-00057-MMD-NA1, 2020 WL 2926457 (D. Nev. June 3, 2020); *United States v. Arreola-Bretado*, No. 3:19-CR-03410-BTM, 2020 WL 2535049 (S.D. Cal. May 15, 2020); *United States v. Kesoyan*, Case No. 2:15-cr-236-JAM, 2020 WL 2039028 (E.D. Cal. Apr. 28, 2020). That is because the policy statement was last substantively amended in November 2016, before the passage of the First Step Act in December 2018. Courts have reasoned that Congress's intent in passing the First Step Act—which allows inmates to move for compassionate release when the BOP declines to do so—was to entrust district courts to consider a variety of circumstances that could be extraordinary and compelling. *See Arreola-Bretado*, 2020 WL 2535049, at *2. The court agrees that its discretion to grant compassionate release is not strictly limited to the specific circumstances in the Sentencing Commission's policy statement.

Lastly, the court must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). The factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established in the Sentencing Guidelines; (5) any pertinent policy statement issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a)(1)-(7).

---

[3] The specific extraordinary and compelling circumstances are: (1) the defendant is either "suffering from a terminal illness" or some other serious condition "that substantially diminishes the ability of the defendant to provide self-care" in prison; (2) the defendant is at least 65 years old, is experiencing deteriorating health, and has served a substantial portion of his sentence; (3) certain family circumstances like the incapacitation of a spouse; and (4) other reasons "as determined by the Director of the [BOP]." USSG § 1B1.13, cmt. 1.

3

### III. Discussion

The crux of the issue before the court is whether this court has discretion to reduce a sentence based on non-retroactive changes in the law, and ultimately whether those changes—especially when significant—satisfy the statutory requirement of an "extraordinary and compelling reason" under 18 U.S.C. 3582(c)(1)(A) to reduce a sentence. The court finds that it does have such discretion and hereby exercises it by GRANTING Wells's motion for compassionate release and reducing his sentence, consistent with the following.

### A. "Extraordinary and compelling" reasons under the First Step Act

The First Step Act, enacted in December 2018, eliminated § 924(c)'s mandatory 25-year sentence stacking for multiple offenses within the same indictment, as is the case here, but did not make the change retroactive. In the Act, Congress importantly clarified that the § 924(c) sentence stacking was not intended to apply to first-time offenders, and instead, only to *repeat* offenders—that is, those who carry out an additional 924(c) crime after already being *convicted* of one. First Step Act, § 403(a). Otherwise, the law led courts to impose overly harsh, decades-long sentences for charges brought in a single indictment.

A circuit split exists over the question of whether courts, under 18 U.S.C. § 3582, can remedy such overly harsh sentences that do not benefit from the prospective changes in the First Step Act. The Fourth and Tenth Circuits have determined that Congress's decision not to make the First Step Act's § 924(c) amendment retroactive *can* form part of a court's "individualized assessment[]" of whether extraordinary and compelling reasons exist in a particular defendant's case. *United States v. McCoy*, 981 F.3d 271, 286 (4th Cir. 2020); *United States v. McGee*, 992 F.3d 1035, 1048 (10th Cir. 2021) (citing *McCoy* with approval).

In contrast, the Third and Seventh Circuits have unambiguously determined that Congress's express refusal to grant retroactivity to the § 924(c) amendment in the First Step Act precludes courts from considering it an "extraordinary and compelling" reason to authorize a sentencing reduction. *United States v. Andrews,* 12 F.4th 255, 257 (3d Cir. 2021); *United States v. Thacker,* 4 F.4th 569, 576 (7th Cir. 2021). The government contends that the Third

and Seventh circuit have the right approach and strongly submits that since Congress expressly made the First Step Act changes non-retroactive, federal courts cannot perform an "end-around" via a prisoner-filed § 3582(c)(1)(A) motion.

The Ninth Circuit has not weighed in but has cited *McCoy* and *Mcgee* with approval. *United States v. Aruda*, 993 F.3d 797, 801 (9th Cir. 2021). It also appears that numerous district courts have followed the lead of the Fourth and Tenth circuits. *United States v. Owens*, 996 F.3d 755, 762 (6th Cir. 2021) (collecting cases).[4] This court elects to do the same.

Far from constituting an "end-around" Congress, the court interprets § 3582(c)(1)(A)—in tandem with § 3553(A)—to empower courts, by *deliberate* congressional design, to consider their unique discretionary and individualized functions and determine "extraordinary and compelling reasons" to warrant a sentence reduction by considering factors such as intervening developments affecting mandatory minimums. *See United States v. Lizarraras-Chacon*, 14 F.4th 961, 968 (9th Cir. 2021) (under substantially similar, but slightly different facts, the circuit court held that a district court abused its discretion when it "**erroneously concluded that it could not consider intervening developments affecting the mandatory minimum in its § 3553(a) factor analysis**."). Thus, the court is comfortable considering intervening developments affecting mandatory minimum sentences, even if Congress did not elect to make them retroactive.

The court agrees with the Fourth Circuit, which explained:

> The fact that Congress chose not to make § 403 of the First Step Act categorically retroactive does not mean that courts may not consider that legislative change in conducting their individualized reviews of motions for compassionate release under § 3582(c)(1)(A)(i). As multiple district courts

---

[4] Judge Gordon recently reduced similarly long § 924(c) stacked sentences last year. *See United States v. Jordan*, No. 2:13-cr-0221-APG-CWH, 2021 WL 3612400, *2 (D. Nev. Aug. 13, 2021) (Reducing 60-year sentence to credit for time served, amounting to eight years in prison, for two stacked § 924(c) armed robberies due to, among other considerations, the disparity with post-First Step Act § 924(c) sentences, lack of criminal history, and rehabilitation in prison); *see also United States v. Williams*, No. 2:13-cr-00221-APG-CWH, 2021 WL 3604835 (D. Nev. Aug. 13, 2021) (Reducing 121-year sentence to credit for time served, amounting to eight years in prison, plus five years of home detention, for five 924(c) convictions, due to among other considerations, the disparity with post-First Step Act § 924(c) sentences, rehabilitation, low recidivism risk, and role in the offense.)

> have explained, there is a significant difference between automatic vacatur and resentencing of an entire class of sentences—with its avalanche of applications and inevitable resentencings—and allowing for the provision of individual relief in the most grievous cases.

*United States v. McCoy*, 981 F.3d 271, 286-87 (cleaned up).

Indeed, the *McCoy* court continued, the very purpose of § 3582(c)(1)(A) is to provide a "safety valve" to allow for sentence reductions when no specific statute addresses relief but "extraordinary and compelling" reasons nevertheless justify a reduction. 981 F.3d at 287.

### B. Sentencing Commission Guidelines

The government further argues that even if the First Step Act does not preclude the court from finding extraordinary and compelling reasons to reduce a sentence, the policy statement on compassionate release in the Sentencing Commission Guidelines U.S.S.G. § 1B1.13 should persuade the court that a change in law does not constitute extraordinary and compelling reasons in this case.

The Ninth Circuit recently rejected this argument, holding "that the current version of U.S.S.G. § 1B1.13 is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (alteration in original). That guideline section "may inform" the court's discretion, but it is not binding on the court. *Id.* Thus, the Sentencing Commission's policy statements do not preclude compassionate release here and the court declines to follow them since they do not reflect changes requested by Congress after the enactment of the First Step Act.

### C. 18 U.S.C. § 3553(a) Factors

Finally, the government asserts that, overarching all other considerations, Wells does not qualify for compassionate release or sentence reduction based on the § 3553(a) factors. The government contends that Wells amassed a "lengthy criminal record" prior to committing this string of robberies; that his crime of five robberies in a few days, brandishing a firearm while wearing a mask and tying up victims to steal personal belongings was particularly egregious; and that his lawless conduct while incarcerated (including possession of dangerous

weapons and other contraband, committing theft, and disobeying prison orders) undermine any justification for granting Wells's motion. The court agrees in part and disagrees in part.

The court finds that the government overstates Wells's criminal record. While Wells did have some criminal history prior to committing the string of robberies, he only had two criminal history points and did not serve any time for any of the offenses. The crimes are concerning, to be sure. They include possession of a controlled substance and driving under the influence; possession of dangerous drugs and carrying a concealed weapon; and driving with a suspended/revoked license and trespassing. The defendant readily admits that he is not proud of his history, but the court agrees with the defendant that it does not amount to a "lengthy criminal history" reflective of a hardened criminal inevitably bound to commit the same or similar crimes if released.[5]

The court agrees that the string of armed robberies, which included tying up victims to steal their personal belongings, is serious, and should receive just punishment. But 112 years is not just. Rather than accomplishing the aims of sentencing, this kind of overly harsh sentencing—induced by a now-defunct draconian sentence-stacking law—is a dead-end for a young defendant, offering no hope for rehabilitation or potential to rejoin society as a constructive citizen. *See* 18 U.S.C. § 3553(a).

In federal judicial tradition, the punishment "should fit the offender, and not merely the crime." *Lizzarraras-Chacon,* 14 F.4th at 966–67 (citing *Pepper v. United States*, 562 U.S. 476, 487–88 (2011). Incredibly, this harsh sentence effectuates neither. It is greater than necessary for both the offender and the crime.

---

[5] The government also states that his "lengthy" and "serious" criminal history nearly *assure* the court that Wells will return to criminal behavior. (ECF No. 408 at 12) ("the [c]ourt has every reason to believe that if he were to serve such a limited portion of his sentence, he would resume reason to believe that if he were to serve such a limited portion of his sentence, he would resume his criminal activities."). For the same reasons just stated, the court finds the government's conclusion overbroad and based on an overstated premise. Nothing in the record appears to guarantee Wells will resume criminal activity upon release and the court does not find that he necessarily presents a risk to the public if released early. *See* 18 U.S.C. § 3142(g).

For example, Wells's sentence is five times longer than the average sentence for murder and decades longer than the average sentences for kidnapping, manslaughter, and other serious crimes. *McCoy,* 981 F.3d at 285. Specifically, the defendant notes that in 2016, the year Wells was sentenced, the average sentences for murder, kidnapping, and sexual abuse were 241 months, 239 months, and 144 months respectively—five to ten times shorter than Wells's sentence of 1,354 months.[6] (ECF No. 404 at 10). If Wells were sentenced under the new § 924(c) mandatory minimums today, his sentence would be 420 months—or 35 years. (*Id.*).

Finally, the court considers Wells's post-incarceration conduct. This is the strongest consideration weighing against compassionate release. His seven violations from 2017 to 2019, including theft, possession of drugs or alcohol, and possession of dangerous weapons, do not bode well for proving to the court that he is working toward rehabilitation. However, nearly half of those violations were for "failing to obey an order," and for engaging in a "group demonstration." And he has not had a violation since August 2019.

While some of these actions concern the court, they do not preclude it from reducing his sentence, at least in part. Wells has demonstrated strong pro-social support from his family (*see* ECF 404-4), completed various educational programs in prison (*Id.*), worked in the kitchen as a food service worker in prison, and made payments towards the restitution and assessment fee he owes while in prison (*Id.*)—all signs of rehabilitation.

### D. Final Sentencing Considerations

Ultimately, it appears doubtful that a lengthy sentence here would appropriately satisfy the aims of federal sentencing. Indeed, a sentence of over 100 years in a case like this undercuts, rather than promotes, respect for the law. A life sentence signifies that a defendant is entirely beyond rehabilitation, can contribute nothing to society, and is worthy only of warehousing. That does not appear to be the case for Wells, so that outcome in this case

---

[6] *See* U.S. Sentencing Commission, 2016 Annual Report and Sourcebook of Federal Sentencing Statistics (2016), https://www.ussc.gov/sites/default/files/pdf/research-andpublications/annual-reports-and-sourcebooks/2016/Table13.pdf.

engenders derision for the criminal justice system, as evidenced in his personal letter to the court (*see* ECF No. 404-1 at 8–9).[7]

As Victor Hugo wrote nearly two centuries ago:

> During the years of suffering, [Jean Valjean] reached the conclusion that life was war in which he was one of the defeated. Hatred was his only weapon, and he resolved to sharpen it in prison and carry it with him when he left…
> [Was it] not outrageous for society to treat thus precisely those of its members who were the least well-endowed in the division of goods made by chance, and consequently the most deserving of consideration[?][8]

*Les Miserables*, Pt. 1, Book Two, Ch. VI (Julie Rose trans., The Modern Library, 2008 ed.).

The court also has a duty under 18 U.S.C. § 3553(6) to avoid unwarranted sentence disparities among defendants and finds that despite the government's contention that a sentence reduction in Wells's case would result in sentencing disparities, no such disparity would ensue. Wells's two co-defendants have already served their respective four-year sentences, and while Wells was more culpable for the overall crime (*see* Indictment, ECF No. 1),[9] 112 years versus four years is a far greater disparity worthy of pause and careful consideration.

Furthermore, many sentencings under the old § 924(c) stacking regime are being reduced by district courts all over the country. Indeed, just last year in the District of Nevada two defendants convicted of similar strings of armed robberies received a sentence reduction from 60 years and 121 years to eight years (time served) each. *See supra* n.4. As such, allowing Wells's overlong sentence to stand would create sentencing disparity *per se*.

---

[7] "The law is unjust. The government is still trying to kill me. The punishment does not match the crime. Killing is killing. The government can try to justify all day long what they are doing [sic] is justice. But they are trying to take my life, end my life by killing me. They just do it under color of law. Trying to make me out to be this monster, when that is not the whole of it at all. I am to die in prison for taking not even $2,000 dollars for and to support my family and believing that I had no choice…I am petrified of breaking the law again, if for no other reason I know this Government don't [sic] play fair."

[8] The court does not intend to make any explicit comparison to Wells and Victor Hugo's character Jean Valjean. This literary quote merely serves as a fictional, but illustrative, example of the impact unjust imprisonment may have on a person.

[9] Wells was indicted for counts 1-12, Andrea Hall for counts 7-12, and Christopher Dobbins for counts 10-12.

Therefore, pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), the court hereby reduces Wells's custodial sentence to 10 years from his current custodial sentence of 107 years and one day. Given some of Wells's rebellious behavior post-incarceration, the court is not persuaded to grant his request for time served. But given the fact that Wells has already served nearly eight years with the prospect of "dying in prison" for a crime undeserving of a life sentence, the court finds an "extraordinary and compelling" reason to reduce Wells's sentence below even that of the mandatory minimum of 35 years if he were sentenced today. Thus, the court finds 10 years a sufficient but not greater than necessary sentence to satisfy the aims of sentencing under § 3553(a) for Wells's case.

In sum, Wells still needs further rehabilitation, and the court encourages him to continue availing himself of all prison resources and remaining compliant with prison procedures. The court also advises Wells not to squander this opportunity and trusts that what is past, can be the prologue for a new future.

Wells's previously imposed term of supervised release of five years, with same conditions given at sentencing, will remain.

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that Wells's motion for sentence reduction (ECF No. 404) be, and the same hereby is, GRANTED. Wells's previously imposed sentence of imprisonment of 1,282 months and one day is hereby reduced to 120 months.

IT IS FURTHER ORDERED that Wells's previously imposed term of supervised release of five years and the previously imposed conditions of supervised release shall remain the same.

DATED THIS 27th day of May 2022.

JAMES C. MAHAN
UNITED STATES DISTRICT JUDGE